IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JAMES M. SINGER, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 14-1598 |
| DAVID HECKLER, Chairman of the Pennsylvania Child Protection Task Force, *et al.,* | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

In this civil action, James M. Singer ("plaintiff"), formerly a licensed psychologist, sued David Heckler ("Heckler"), Chairman of the Pennsylvania Child Protection Task Force ("Task Force"), and the Task Force's other unidentified "members" (collectively, "defendants") under 42 U.S.C. §1983 to redress the alleged violation of his constitutional rights. Pending before the court is defendants' motion to dismiss the operative complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 12). Also pending is plaintiff's "Motion for Summary Judgment, Request for Clarification, Continuance, and Appointment of Counsel" (ECF No. 16). Because plaintiff's claims fail to state any plausible basis for relief under §1983, the complaint will be dismissed with prejudice and plaintiff's motion will be denied.

I. **Factual and Procedural Background**

In April 1989, the Pennsylvania Bureau of Profession and Occupational Affairs, State Board of Psychology (the "Board") instituted formal disciplinary proceedings against plaintiff which culminated in an indefinite suspension of his license. *See generally Singer v. Bd. of Prof'l*

1

*and Occupational Affairs, State Bd. of Psychology,* 633 A.2d 246 (Pa. Commw. Ct. 1993). Plaintiff has consistently maintained that these proceedings were initiated in retaliation for reports he made about suspected child abuse and, to that end, he has filed numerous federal lawsuits challenging the Board's prosecution and the resulting suspension of his license. *See Singer v. Lewis,* No. 1:91–CV–00859 (M.D. Pa. filed July 2, 1991); *Singer v. Mitchell,* No. 3:94–CV–01761 (M.D. Pa. filed Oct. 27, 1994); *Singer v. Mitchell,* No. 4:03–CV–01085 (M.D. Pa. filed July 2, 2003); *Singer v. Dunnewold,* No. 3:06–CV–01412 (M.D. Pa. filed July 19, 2006); *Singer v. Bowman,* No. 1:08–CV–01999 (M.D. Pa. filed Nov. 4, 2008); *Singer v. Bureau of Prof'l & Occupational Affairs,* No. 3:12–CV–00527 (M.D. Pa. filed Mar. 23, 2012); *Singer v. Bureau of Prof'l and Occupational Affairs,* No. 3:CV-13-3059 (M.D. Pa. filed Dec. 19, 2013) ("*Singer VII*").

The procedural and substantive details of these lawsuits were previously summarized by the United States District Court for the Middle District of Pennsylvania in the most recent of plaintiff's civil actions, and they need not be repeated here. *See Singer VII,* Civil Action No. 3::CV-13-3059, 2014 WL 2048159, at *4-7 (M.D. Pa. May 16, 2014) (Report and Recommendation adopted by the district court). For present purposes, it is sufficient to reference the court's observation that

> [i]n each of these seven lawsuits, [plaintiff] has alleged constitutional violations related to the suspension of his license to practice psychology in 1992, including the investigation and prosecution of that administrative action before the Board, his unsuccessful attempt to obtain an unconditional reinstatement of his license, and his unsuccessful attempt to initiate an official investigation into and criminal charges against an ever-growing list of alleged co-conspirators intent on retaliating against him for reporting suspected child abuse twenty-five years ago.

*Singer VII,* 2014 WL 2048159 at *8.

In this, his eighth lawsuit, plaintiff again seeks to obtain a reinstatement of his license as well as lost income for the nearly twenty-five year period during which he has been unable to

2

practice as a licensed psychologist. Plaintiff also seeks, once again, to initiate an official investigation and criminal charges against individuals who have allegedly conspired with his retaliators. This time, plaintiff's allegations are directed at the Task Force and its members, including its chairman, Heckler.

By way of relevant background, the court notes that the Task Force was established in December 2011 by virtue of identical resolutions introduced in both chambers of the Pennsylvania General Assembly. *See* S.R. 250, 195th Gen. Assemb., Reg. Sess. (Pa. 2011) (hereafter, "S.R. 250"); H.R. 522, 195th Gen. Assemb., Reg. Sess. (Pa. 2011) (hereafter, "H.R. 522"). Pursuant to these resolutions, the Task Force was charged with "conduct[ing] a thorough and comprehensive review" in order to "ascertain any inadequacies relating to the mandatory reporting of child abuse" and thereby "restore public confidence in the ability of the Commonwealth to protect the victims of child abuse." S.R. 250 at 1; H.R. 522 at 1. To achieve these goals, the Task Force was specifically empowered:

> (1) [t]o examine and analyze the practices, processes and procedures relating to the response to child abuse[;]
>
> (2) [t]o review and analyze law, procedures, practices and rules relating to the reporting of child abuse[;]
>
> (3) [t]o hold public hearings for the taking of testimony and the requesting of documents[;] [and]
>
> (4) ... to administer oaths and affirmations to witnesses appearing before the [T]ask [F]orce.

*Id*. As part of its official duties, the Task Force was charged with submitting a final report to the governor and the legislature that would include recommendations designed to improve the reporting of child abuse, to implement any necessary changes in related statutes and practices, policies and procedures of the Commonwealth, and train appropriate individuals in the reporting of child abuse. S.R. 250 at 4; H.R. 522 at 4. In November 2012, the Task Force submitted its

3

final report, which included a number of policy and statutory recommendations along those lines. (*See* Report of the Task Force on Child Protection, available at:  http://www.child protection.state.pa.us/Resources/press/2012-11-27%20Child%20 Protection %20Report %20 FINAL.pdf, at 1-6, 21-28, 29-44.)  By the terms of the General Assembly's resolutions, the Task Force expired on December 31, 2012.  *See* S.R. 250 at 5; H.R. 522 at 5.

In the amended complaint (ECF No. 7), the operative pleading in this case, plaintiff seeks to hold Heckler and the other members of the Task Force liable, in both their individual and official capacities, for the alleged violation of plaintiff's constitutional rights.  (Amended Compl. ¶96; *id.* at p. 4, ¶52[1].)  In essence, plaintiff faults the Task Force for failing to address the "criminal violations of official oppression, alteration and/or fabrication of written evidence and perjury by the government" that allegedly occurred in connection with the Board's proceedings, as supposedly "confirmed" in a memorandum compiled by Pennsylvania State Police Lt. Ivan H. Hoover.  (Amended Compl. ¶ 4.)[2]  Plaintiff states that, after bringing these matters to Heckler's attention, Heckler left him a voicemail message on November 21, 2012 stating:

---

[1] The amended complaint includes averments on pages 3 and 4 that are erroneously designated paragraphs 48 through 52.

[2] The memorandum, dated August 6, 1997, is an unofficial compilation of plaintiff's allegations and supporting evidence concerning the alleged improprieties in the Board's investigation and prosecution; it is not an official PSP investigative report.  (AC Ex. 6, ECF No. 8-6.)  In relevant part, the memorandum states the following:

> [ ] Mr. Singer is alleging that the investigation and prosecution for his case was biased.  That perjury and exculpatory evidence was ignored by the Prosecutor, John D. Kelly ... He alleges that other officials within the Department of State[ ] were aware of problems with the prosecution but did not intervene.  That there were violations of the Pennsylvania Crimes Code, Title 18, including Perjury, Sec. #4902; Unsworn Falsification to Authorities, Sec # 4904; Tampering with or Fabricating Physical Evidence, Sec. #4910; Obstructing Administration of Law or other Governmental Functions, Sec. #5101; and Official Oppression, Sec. #5301.  Mr. Singer advises that he and

> I believe you [Singer] have been calling in connection with the Task Force. I just wanted to let you know, that I have looked into your suggestion [and] read your materials. … I have reviewed your materials as several members of the [T]ask Force have … You were *appropriately* dealt with by the disciplinary people with the Psychology Licensing Board. … We of course don't address your situation in our report…

(Amended Compl. ¶70 (emphasis and initial alteration in the original).) According to plaintiff, the Task Force acted contrary to its legislative mandate by failing to:

- "examine and analyze the failures in lack of the [sic] response to child abuse that Singer reported" (Amended Compl. ¶50(a));

- "review and analyze law, procedures, practices and rules relating to the retaliation after Singer's reporting of child abuse" (*id* ¶50(b));

- "hold public hearings, to follow up on written documentation from Singer or State Police Lt. Hoover" (*id*. ¶50(c));

- "make adequate recommendations to improve the reporting of child abuse [covered up in Singer's case]" (*id*. ¶50(d));

---

others, including State Representatives, Senators, and Congressmen, have requested an investigation of the manner in which his case was prosecuted. Among the Agencies contacted were the U.S. Attorney General, Pennsylvania Attorney General, Pennsylvania Inspector General, and the Dauphin County District Attorney's Office. To date, a full inquiry has not been conducted.

[ ] Mr. Singer contacted this officer requesting an inquiry by the Pennsylvania State Police on June 13, 1996. Mr. Singer and this officer are personally acquainted. Mr. Singer was informed that due to the complexity of the case, this officer would review materials he presented and attempt to summarize the events and allegations. Once done, the summary would be presented to the Department to establish if a criminal case existed and if the Pennsylvania State Police would pursue an investigation.

[ ] Here-in is a summary of the prosecution of Mr. Singer by the Department of State, Bureau of Professional and Occupational Affairs, State Board of Psychology. Some documents which appear to support Mr. Singer's claims are attached. Other documents and testimony from the hearing are available for review.

(AC Ex. 6 ¶¶2-4, ECF No. 8-6.)

- "implement any necessary changes in state laws and practices, policies and procedures... to ...stop the cover up of child abuse in Singer's case" (*id*. ¶50(d)); or

- "ensure that there were procedures in place to ensure that Singer's report was investigated and ... that all reports were investigated" (*id*. ¶50(d)).

As a result of these "failures," plaintiff concludes that "Heckler/Task Force and the government apparently condone government covering up of mandated reports of child abuse." (Amended Compl. ¶50(d).) He infers that defendants are involved in "an ongoing conspiracy" with "the former and present Attorneys General[] to suppress any just assessment of Defendant Board of Psychology's violative actions." (*Id.* at 3, ¶ 51.) He concludes that "Heckler's actions … directly resulted in the denial of [his] license to practice psychology in the Commonwealth of Pennsylvania...." (*Id.* ¶95.)

Consequently, plaintiff filed this §1983 action on November 21, 2014 to redress the alleged deprivation of his rights to free speech, procedural and substantive due process of law, and equal protection of the laws. (Amended Compl. ¶¶ 15-17; *id*. at 3, ¶¶ 49 and 51.) As relief, plaintiff "requests writs of Coram Nobis and Nunc Pro Tunc[] to overturn [the Board's] illegal decision" (*id*. ¶31), so that his license can be "fully restored with a clear record." (*Id.* ¶95.) In addition, he seeks $1,731,000 in lost income, $1,000,000 in "special damages," plus interest, injunctive relief, and "protection from further retaliation." (*Id*. ¶¶ 8, 98-99.) Finally, plaintiff requests that Heckler be investigated and prosecuted for misprision of felony. (*Id.* ¶69.)

On May 18, 2015, defendants filed their pending motion to dismiss and supporting brief (ECF Nos. 12 and 13). Defendants assert that:

> [ ] Since [his license] suspension, Dr. Singer has filed numerous lawsuits, in several venues, in an attempt to have his license reinstated; however, Plaintiff has been unsuccessful in his previous legal endeavors. Plaintiff now brings the instant action against David Heckler, Chairman of the Pennsylvania Child Protection Task Force, as well as the Task Force, in which he appears to allege – once again – that his constitutional rights have been violated as a result of his license revocation.

[ ] Plaintiff's Complaint should be dismissed because he failed to bring his lawsuit within the applicable two-year statute of limitations."

(Defs.' Mot. Dismiss ¶¶ 2-3, ECF No. 12.)

Plaintiff subsequently filed a "Motion for Summary Judgment, Request for Clarification, Continuance, and Appointment of Counsel" (ECF No. 16) and supporting "brief" (ECF No. 17). Invoking Rule 12(e) of the Federal Rules of Civil Procedure, plaintiff argues that defendants' motion is too vague to permit him to respond. (Pl.'s Br. ¶14.) In particular, plaintiff objects that defendants' motion "do[es] not specify any criteria, related to the following required items" -- namely:

a. which lawsuit was filed [by plaintiff] against whom?
b. when the deadline for filing that lawsuit was due?
c. when that lawsuit was actually filed?
d. and how late the filing actually was?

(Pl.'s Br. ¶11.) Plaintiff requests a continuance of his response deadline until this, and other information outlined in the amended complaint,[3] is provided by defendants. In addition, Plaintiff requests entry of summary judgment in his favor because "Heckler has not raised any specific facts or presented any assertions, related to Heckler's own actions or actions by any government, to dispute the actual truth of any of Singer's claims or precisely dispute any *specific facts*." (Pl.'s Br. ¶16.) Finally, plaintiff requests the appointment of a "private attorney general" to investigate alleged RICO violations related to the government's alleged retaliation and cover-up of the child abuse that he reported. (*Id.* ¶¶ 40-41.)

---

[3] In the amended complaint, plaintiff professes a need for information concerning whom Heckler spoke to from Children and Youth Services and the Board, and when, relative to Lt. Hoover's "summary and letters." (*See* Pl.'s Br. ¶ 25, referencing Amended Compl. ¶71.)

7

## II. Discussion

### A. DEFENDANTS' MOTION TO DISMISS

#### 1. Standard of Review

Defendants request a dismissal of the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a Rule 12(b)(6) dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). A claim for relief must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. In addition, the "plausibility" requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

Because the court has granted the plaintiff leave to proceed *in forma pauperis*, the court has an independent obligation to examine the complaint and consider whether it is frivolous or fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii)

(providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that... (B) the action or appeal-(i) is frivolous or malicious; [or] (ii) fails to state a claim on which relief may be granted"). A complaint is frivolous under § 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir.1995). In addressing whether a *pro se* plaintiff's complaint is frivolous, the court must liberally construe the allegations in the complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir.2011). For purposes of its §1915(e)(2)(B)(ii) analysis, the court employs the same standard of review that is applied to motions seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir.1999) (applying Rule 12(b)(6) standard to dismissal for failure to state a claim under §1915(e)(2)(B)).

    2. <u>Analysis</u>

Plaintiff's claims are asserted under 42 U.S.C. §1983, which affords a private right of redress against "[e]very person who, under color of [state law]... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any [federally protected] rights, privileges, or immunities." 42 U.S.C. § 1983. For § 1983 actions brought in federal courts within the Commonwealth of Pennsylvania, the applicable statute of limitations period is two years. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir.1985) ("[T]he two-year Pennsylvania limitation for personal injury actions of 42 Pa. Const.Stat. Ann. § 5524 governs all § 1983 actions brought in Pennsylvania.") (citing decisions). The date when a civil rights action accrues is a matter of federal law. *Wallace v. Kato,* 549 U.S. 384, 388 (2007). A claim accrues when the

plaintiff becomes aware, or should have become aware, of both the fact of the injury and its causal connection to the defendant. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the statute of limitations period); *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir.1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Here, defendants premise their Rule 12(b)(6) motion entirely on the statute of limitations defense. "[T]he law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975)). In this case, since plaintiff's original complaint was submitted to the Clerk of Court, along with his *in forma pauperis* application, on November 21, 2014, his claims are time barred to the extent they accrued prior to November 21, 2012. According to the terms of S.R. 250 and H.R. 522, the Task Force was in existence for approximately one year, from mid-December 2011 to December 31, 2012. Its final report was submitted in November 2012. Thus, much of the Task Force's business was conducted more than two years prior to the filing of this lawsuit; however, the precise date on which the report was released is not clear from the present record or the report itself. Plaintiff's claims appear to be partly based on Heckler's November 21, 2012 voicemail, which occurred precisely two years before this action was filed.

Nevertheless, even if plaintiff's claims are not time barred, they are subject to *sua sponte* dismissal under 28 U.S.C. §1915(e)(2)(B)(ii) because they plainly fail to state any cognizable

basis for relief. To state a viable claim under 42 U.S.C. § 1983, a plaintiff "'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Lomax v. U.S. Senate Armed Forces Serv. Comm.,* 454 F. App'x 93, 95 (3d Cir.2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Here, plaintiff failed to allege facts that could establish a plausible violation by the defendants of his federal rights to due process, equal protection, or freedom of speech. To state a procedural due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Mulholland v. Government Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir.2013). To establish a substantive due process claim under § 1983, a plaintiff must show that the government's deprivation of a constitutionally protected interest "shocks the conscience." *See Connection Training Serv. v. City of Phila.*, 358 F. App'x 315, 319 (3d Cir.2009). Although plaintiff alleges that he was deprived of a constitutionally protected interest in practicing his chosen profession, his averments do not logically implicate the named defendants in that deprivation, which occurred over twenty years ago. *See Valdez v. Danberg*, 576 F. App'x 97, 100 (3d Cir.2014) ("It is well-established that an individual government defendant in an action under § 1983 must have had some personal involvement in the alleged wrongdoing to be held liable.") (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005)). In addition, notwithstanding his conclusory averments of "conscience-shocking" conduct (*see* Amended Compl. ¶ 15), plaintiff failed to allege actions on the part of any defendant that could plausibly satisfy that standard.

Plaintiff's claims similarly fail to establish a violation of his First Amendment or Equal Protection Rights. Assuming he is attempting to assert a selective enforcement claim, plaintiff must demonstrate "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ... or to prevent the exercise of a fundamental right.'" *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir.2014) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n.5 (3d Cir.2010)). In order to plead a retaliation claim under the First Amendment, plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)). The averments in the amended complaint do not plausibly establish that the Task Force ever enforced laws against plaintiff or otherwise retaliated against him based on his reports of suspected child abuse. The only body to have enforced laws or taken adverse action against plaintiff is the Board, which is not a named party in this lawsuit.

It is clear from S.R. 250 and H.R. 522 that the Pennsylvania General Assembly created the Task Force simply to conduct a study of the Commonwealth's laws and policies pertaining to the protection of children and to make recommendations about changes that could improve the effectiveness of those laws and policies. To the extent plaintiff is complaining that the Task Force should have somehow effectuated the reinstatement of his license, his claims are baseless because the Task Force, during its limited existence, had no power or authority over the Board with respect to such matters and could not have required the Board to reinstate plaintiff's license. In theory, the most that the Task Force could have done for plaintiff is reference his case as a

basis for recommending changes in the laws and policies pertaining to the reporting of suspected child abuse. Plaintiff, however, had no constitutionally protected interest in this respect, and the Task Force had no specific responsibilities or duties with respect to plaintiff. Plaintiff's personal dissatisfaction with the defendants' efforts and recommendations simply does not translate into a violation of his constitutional rights. Accordingly, plaintiff did not state a viable claim under §1983.

3. Amendment

The Court of Appeals for the Third Circuit has instructed that a district court must generally permit a curative amendment if a claim is vulnerable to dismissal for failure to state a claim; however, a court need not grant leave to amend if amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). In this case, the court's dismissal of the amended complaint is based upon deficiencies in the pleading that are not curable by way of further amendment. Accordingly, it would be futile to allow plaintiff to amend his claims, and the amended complaint will therefore be dismissed with prejudice.

B. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR CLARIFICATION, CONTINUANCE, AND APPOINTMENT OF COUNSEL

In rendering its ruling in this matter, the court has given due consideration to plaintiff's "Motion for Summary Judgment, Request for Clarification, Continuance, and Appointment of Counsel" (ECF NO. 16) and supporting brief (ECF No. 17). As an initial point, the court notes that plaintiff's request for a more definite statement concerning the basis of defendants' motion is misplaced, as Rule 12(e) applies only to "pleading[s] for which a responsive pleading is allowed," Fed. R. Civ. P. 12(e), and defendants' motion is not a "pleading." *See* Fed. R. Civ. P. 7(a) (defining "pleadings"); *see also Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning*

*Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (stating that "[a] motion to dismiss is not a pleading" and citing Fed.R.Civ.P. 7(a)); *Boyajian v. United States*, 825 F. Supp. 714, 716 n.2 (E.D. Pa.1993) ("[T]here is no provision under the Federal Rules of Civil Procedure for a 'motion for a more definite statement of a motion to dismiss'"). In any event, however, given the patent implausibility of plaintiff's legal theories – which the court is passing on quite independently of defendants' motion, the court finds that plaintiff's requests for additional information from defendants and for a continuance of the briefing deadline would serve no constructive purpose other than to delay a final disposition of this case. In light of the foregoing, the court finds that plaintiff's motion for a summary judgment is both substantively and procedurally inappropriate. Further, the court finds no grounds that warrant the appointment of a "private attorney general" to investigate the RICO violations alleged by plaintiff. Because the court finds no basis justifying the relief requested by plaintiff, his motion will be denied.

### III. Conclusion

Based upon the foregoing discussion, the plaintiff's amended complaint will be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(ii). Defendants' motion to dismiss (ECF No. 12) will be denied as moot. Plaintiff's "Motion for Summary Judgment, Request for Clarification, Continuance, and Appointment of Counsel" (ECF No. 16) will also be denied. An appropriate order follows.


Dated: December 16, 2015         /s/ Joy Flowers Conti
                                 Joy Flowers Conti
                                 Chief United States District Judge